# United States District Court
## MIDDLE DISTRICT OF TENNESSEE (NASHVILLE DIVISION)

UNITED STATES OF AMERICA

V.

TERESA WEST,
CASEY WEST, and
DIANA WEST

**CRIMINAL COMPLAINT**

Case Number: 09-2095

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From in or about June 2009 through on or about August 3, 2009 in Davidson County, in the Middle District of Tennessee defendant(s) did,

Knowingly, in or affecting interstate commerce, recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person, knowing, or in reckless disregard of the fact, that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act.

in violation of Title __18__ United States Code, Section(s) __1591(a)(1)__ . I further state that I am a __Special Agent with the FBI__ and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof: ■ Yes ☐ No

_____
Signature of Complainant
Clifford Goodman
Special Agent, FBI

Sworn to me and subscribed in my presence,

__August 10, 2009__  at  __Nashville, Tennessee__
Date                      City and State

__Todd J. Campbell, United States District Court, Chief Judge__
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT OF CLIFFORD GOODMAN
## Federal Bureau of Investigation

Clifford Goodman, being first duly sworn on oath, states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation and have been employed as a Special Agent for approximately 12 years.

2. This affidavit is submitted in support of a Criminal Complaint for the arrest of **TERESA WEST**, **CASEY WEST**, and **DIANA WEST**, for the following offense: from in or about June 2009 through on or about August 3, 2009, in the Middle District of Tennessee, **TERESA WEST**, **CASEY WEST**, and **DIANA WEST** did knowingly, in or affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, knowing, or in reckless disregard of the fact, that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a)(1) and 1591(b)(2).

3. The following information contained in this affidavit is based on my training and experience, my personal participation in this investigation and information provided to me by other law enforcement officials. Unless otherwise indicated, where I have referred to written or oral statements, I have summarized them in substance and in part, rather than verbatim. Not all of the facts of the investigation known to me are contained herein, only those necessary to establish probable cause for the arrest of **TERESA WEST**, **CASEY WEST**, and **DIANA WEST**.

4. I was informed of the following information by a detective with the Metropolitan Nashville Police Department:

    a. In early 2009, the Vice Division of the Metropolitan Nashville Police Department (MNPD) received an anonymous lead that an individual by the name of **TERESA WEST** had utilized minor girls from a Robertson County high school to work for her as prostitutes; and that **TERESA WEST**, her son **CASEY WEST**, and her daughter **DIANA WEST**, all were advertising escort services through a website on the Internet.

    b. At that time, **TERESA WEST** was living in Nashville, Tennessee. The MNPD detective conducted surveillance on the home of **TERESA WEST**. Although the detective did observe an adult customer, he did not observe any minors during the surveillance. The adult customer admitted paying **TERESA WEST** $40 for oral sex. The detective later discovered that **TERESA WEST** was evicted from the residence, although he was unable to determine the new address for **TERESA WEST**.

1

c. The detective located an advertisement that had been placed on May 28, 2009 on the above mentioned Internet website in the "escorts" section and that read as follows:
*Ravishing Raven - - Beautifil, Tan, Blonde. Avaible for dinner, dinning, or just great companionship. Fetishis, bachelor parties, and couples welcome. 615-290-0635 also avaible in Gatlinburg and Knoxville.*
The detective used the phone number to make undercover contact with **TERESA WEST**, who referred to herself as "Raven" and told the undercover detective about the different girls she had available. **TERESA WEST** admitted that besides herself, she also had at her disposal a 30 year old, a 23 year old, and an 18 year old. **TERESA WEST** stated that the standard fee was $160.00 per hour.

d. Several days later, the detective had a confidential informant (CI) called the number (615-290-0635), under the detective's direct supervision. The conversation was recorded. Another woman answered the phone, who was later determined to be **DIANA WEST** via voice recognition. The CI asked for services and gave his location, and **DIANA WEST** stated that she would call him back later. Later contact was made with both **TERESA WEST** and **DIANA WEST**, and **TERESA WEST** described the available girls (herself, a 22 year old, and a 19 year old) and stated that the price was $160.00 for an hour.

e. During the investigation, the detective received information that **DIANA WEST** worked as a prostitute for her mother, **TERESA WEST**.

f. During the investigation, the detective determined that a sixteen year old girl ("Minor A") was working for **TERESA WEST**. The detective was able to verify the identity and age of this minor child through the license plate on her car, her driver's license, her phone number, her legitimate work place, and direct observation of her, including in association with **TERESA WEST**.

g. During the investigation, the detective determined that **TERESA WEST** utilizes a Wal-Mart Green Dot card so that her prostitutes can make deposits after they receive the money from their "dates." A Green Dot card is a prepaid, reloadable Visa or Mastercard with the user's name imprinted on it, similar to a debit card.

5. The MNPD detective requested my assistance in this investigation on or about June 26, 2009.

6. During the investigation, we obtained information for three of **TERESA WEST**'s phone numbers (615-290-0635, 615-485-3362, and 865-429-5846) and a known phone number for Minor A. A review of these records indicated that **TERESA WEST** and Minor A were in contact in excess of 180 times from May 2009 to the present.

2

7. During a surveillance of **TERESA WEST** on the evening of August 3, 2009, **TERESA WEST** was observed checking into a Motel 6 in Murfreesboro, Tennessee. After checking in, she went to Room 132. Later that night, Minor A was observed accessing the same room utilized by **TERESA WEST**. After Minor A entered the motel room, she was taken into custody.

8. While we were in Room 132 with Minor A, **TERESA WEST** called Minor A on Minor A's cell phone. Minor A did not answer the phone. We instructed Minor A to return the call to **TERESA WEST** to assure that everything in the hotel room was fine.

9. During the interview of Minor A, which began late in the evening on August 3, 2009, she reported the following information:

   a. She is sixteen years of age and still enrolled in high school.

   b. She dated **CASEY WEST** for several months in 2008 and they remain friends. **CASEY WEST** told Minor A that his mother was in the prostitution business and had girls who worked for her. **CASEY WEST** later told Minor A that his mother needed help and suggested that Minor A work with her. **CASEY WEST** also stated that he needed money too. Minor A ultimately agreed and began working as a prostitute for **TERESA WEST** in June of 2009, in exchange for monetary compensation.

   c. **TERESA WEST** knew that Minor A was sixteen but told Minor A to say that she was eighteen.

   d. The first time Minor A worked for **TERESA WEST**, **CASEY WEST** accompanied her to the client and took $20 from Minor A's proceeds as a "driver's fee." Minor A has given **CASEY WEST** money on other occasions as well.

   e. Minor A advised that a typical client paid $110. Minor A would keep approximately $70 and the rest was paid to **TERESA WEST**.

   f. Minor A has acted as a prostitute for **TERESA WEST** on approximately twenty to thirty occasions in the last two months. Typically, after Minor A would arrive at the client's location, she would receive a call from **TERESA WEST** or **DIANA WEST** to verify that she had arrived at the room and that the client was present. After engaging in sexual activity with the client and receiving the agreed upon monetary compensation, Minor A would receive a portion of the proceeds from each date and would provide the rest to **TERESA WEST**, usually by getting a "money pack" for **TERESA WEST** to transfer to her Green Dot card.

g. Recently, Minor A received at least one call in Tennessee from **TERESA WEST** when **TERESA WEST** was in South Carolina, instructing Minor A to report for a prostitution job.

h. On August 3, 2009, Minor A stated that earlier in the evening she had received a phone call from **TERESA WEST** instructing Minor A to meet a client for prostitution for $200 at a Motel 6 in Murfreesboro, Tennessee in Room 132.

10. In the interest in full disclosure, on August 7, 2009, I presented this affidavit to U.S. Magistrate Judge E. Clifton Knowles, who declined to sign the affidavit based on his statutory interpretation of the following language: "that the person has not attained the age of 18 years and will be *caused to* engage in a commercial sex act," 18 U.S.C. § 1591(a) (emphasis added), as applied to the facts identified in this affidavit.

11. Based on the above information, I believe there is probable cause to believe that from in or about June 2009 through on or about August 3, 2009, in the Middle District of Tennessee, **TERESA WEST**, **CASEY WEST**, and **DIANA WEST** did knowingly, in or affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, or maintain by any means a person, knowing, or in reckless disregard of the fact, that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a)(1) and 1591(b)(2).

Clifford Goodman
Special Agent
Federal Bureau of Investigation

Subscribed and Sworn to
before me this 10th day of August, 2009.

Todd J. Campbell
United States District Court, Chief Judge
Middle District of Tennessee

4